UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DENISE L. MILLER, | |
| Plaintiff, | CIVIL ACTION NO. 3:20-CV-01088 |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY[1], | (MEHALCHICK, M.J.) |
| Defendant. | |

**MEMORANDUM**

Plaintiff Denise L. Miller ("Miller") brings this action under section 1631(c) of the Social Security Act, 42 U.S.C. § 1383(c) for judicial review of the final decision of the Commissioner of Social Security (the "Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. For the following reasons, the undersigned shall order the Commissioner's decision be **AFFIRMED.**

**I.   BACKGROUND AND PROCEDURAL HISTORY**

On July 12, 2017, Miller protectively filed an application under Title XVI for supplemental security income benefits, claiming disability beginning July 1, 2017. (Doc. 13-2, at 16). The Social Security Administration initially denied the application on February 8, 2018, prompting Miller's request for a hearing, which Administrative Law Judge (ALJ) Richard Zack held on February 1, 2019. (Doc. 13-2, at 16). In an April 5, 2019, written

---

[1] The Court has amended the caption to replace, as the named defendant, Social Security Commissioner Andrew M. Saul, with his successor, Social Security Commissioner Kilolo Kijakazi. See Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

decision, the ALJ determined that Miller is not disabled and therefore not entitled to benefits or income under Title XVI. (Doc. 13-2, at 28). On April 23, 2020, the Appeals Council subsequently denied Miller's request for review. (Doc. 13-2, at 2).

On June 29, 2020, Miller commenced the instant action. (Doc. 1). The Commissioner responded on January 12, 2021, providing the requisite transcripts from Miller's disability proceedings. (Doc. 12; Doc. 13). The parties then filed their respective briefs, with Miller raising two principal bases for reversal or remand. (Doc. 16; Doc. 17; Doc. 18).

## II. STANDARDS OF REVIEW

To receive benefits under XVI of the Social Security Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.909. To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in significant numbers in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).[2]

### A. ADMINISTRATIVE REVIEW

The "Social Security Administration, working through ALJs, decides whether a claimant is disabled by following a now familiar five-step analysis." *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 200–01 (3d Cir. 2019). The "burden of proof is on the claimant at all steps

---

[2] A "physical or mental impairment" is defined as an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

except step five, where the burden is on the Commissioner of Social Security." *Hess*, 931 F.3d at 201; *see* 20 C.F.R. § 416.912(a)(1). Thus, if the claimant establishes an inability to do past relevant work at step four, the burden shifts to the Commissioner at step five to show that jobs exist in significant numbers in the national economy that the claimant could perform consistent with his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. § 416.912(a)(1).

B. JUDICIAL REVIEW

The Court's review of a determination denying an application for Title XVI benefits is limited "to considering whether the factual findings are supported by substantial evidence." *Katz v. Comm'r Soc. Sec.*, 798 F. App'x 734, 736 (3d Cir. 2019). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). The quantum of proof is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict created by such evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). In an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

The question before the Court, therefore, is not whether Miller is disabled, but whether the Commissioner's determination that Miller is not disabled is supported by substantial

evidence and was reached based upon a correct application of the relevant law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence."); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The [Commissioner]'s determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003). If "the ALJ's findings of fact . . . are supported by substantial evidence in the record," the Court is bound by those findings. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).

### III. THE ALJ'S DECISION

In his written decision, the ALJ determined that Miller "has not been under a disability, as defined in the Social Security Act, since July 12, 2017, the date the application was filed." (Doc. 13-2, at 28). The ALJ reached this conclusion after proceeding through the five-step sequential analysis provided in 20 C.F.R. § 416.920(a).

#### A. STEP ONE

At step one of the five-step analysis, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i). If a claimant is engaging in substantial gainful activity, the claimant is not disabled, regardless of age, education, or work experience. 20 C.F.R. § 416.920(b). Substantial gainful activity is defined as work activity requiring significant physical or mental activity and resulting in pay or profit. 20 C.F.R. § 416.972. The ALJ must consider only the earnings of the claimant. 20 C.F.R. § 416.974. Here, the ALJ determined that Miller "has not engaged in substantial gainful activity

since July 12, 2017, the application date," and therefore proceeded to step two of the analysis. (Doc. 13-2, at 18)

    B.   STEP TWO

At step two, the ALJ must determine whether the claimant has a medically determinable impairment – or a combination of impairments – that is severe and meets the 12-month duration requirement. 20 C.F.R. § 416.920(a)(4)(ii). If the ALJ determines that a claimant does not have an impairment or combination of impairments that significantly limits the claimant's "physical or mental ability to do basic work activities," the ALJ will find that the claimant does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c). If, however, a claimant establishes a severe impairment or combination of impairments, the ALJ proceeds to consider step three. Here, the ALJ found that Miller has five severe impairments: lichen plano-pilaris, acne keloidalis nuchae, asthma, obesity, and major depressive disorder. (Doc. 13-2, at 18). Additionally, the ALJ noted that Miller has a non-severe impairment of hypertension. (Doc. 13-2, at 18).

    C.   STEP THREE

At step three, the ALJ must determine whether the severe impairment or combination of impairments meets or equals the medical equivalent of an impairment listed in the version of 20 C.F.R. § Pt. 404, Subpt. I, App. 1 that was in effect on the date of the ALJ's decision. 20 C.F.R. § 416.920(a)(4)(iii), 416.925, 416.926. The sections in this appendix are commonly referred to as "listings." If the ALJ determines that the claimant's impairment or impairments meet a listing, then the claimant is considered disabled, otherwise the ALJ must proceed to and analyze the fourth step of the sequential analysis. 20 C.F.R. § 416.920(d). Here, the ALJ determined that none of Miller's impairments, considered individually or in combination,

meets or equals the severity of a listed impairment. (Doc. 13-2, at 19). The ALJ considered listings 3.03 – Asthma, 8.04 – Chronic infections of the skin or mucous membranes, 8.05 – Dermatitis, and 12.04 – Depressive, bipolar and related disorders. (Doc. 13-2, at 19).

### D. RESIDUAL FUNCTIONAL CAPACITY

Between steps three and four, the ALJ evaluates the claimant's residual functional capacity (RFC), crafted upon consideration of all the evidence presented. At this intermediate step, the ALJ considers all claimant's symptoms and "the extent to which [they] can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 416.929(a). This involves a two-step inquiry according to which the ALJ must (1) determine whether an underlying medically determinable mental impairment or impairments could reasonably be expected to produce the claimant's symptoms; and, if so, (2) evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functional limitations. *See* 20 C.F.R. § 416.929(b)–(c).

Here, the ALJ found that while Miller's medically determinable impairments could reasonably be expected to cause her alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (Doc. 13-2, at 23). The ALJ concluded that Miller has the RFC

> to perform light work as defined in 20 [C.F.R. §] 416.967(b) except she can lift and carry 20 pounds occasionally, and 10 pounds frequently, and sit, stand, or walk, 6 out of 8 hours, with normal breaks and lunch periods. She can frequently climb ramps, a few steps or stairs, and balance, stoop and kneel. She can occasionally crouch and crawl. She has full use of her upper extremities and hands for activities such as reaching, handling, fingering, and feeling of objects on a continuous basis throughout the workday. She should avoid a hazardous work environment where she is required to climb ladders and scaffolds, be around unprotected dangerous heights, and unprotected

dangerous machinery, or be exposed to excessive vibration. Likewise, she cannot work in extremes of temperature or humidity, or heavy concentrations of dust, fumes, and gases. She may have some difficulty working in a job where she has to deal with the public face to face on a continuous basis throughout the workday. She may also have some difficulty working as a team member, where she has constant face-to-face interaction with numerous coworkers or supervisors, working as a team member throughout the workday. She can have occasional contact with coworkers, supervisors and the public and respond appropriately. Although she may have some difficulty transitioning into a highly detailed or complex occupation, nonetheless, she maintains a baseline ability that she can understand, remember, and carry out simple instructions, and make simple work related decisions. She is also able to respond appropriately to changes that typically take place in a simple, routine, competitive type job.

(Doc. 13-2, at 22).

E.   STEP FOUR

Step four requires the ALJ to determine whether the claimant had, during the relevant period, the RFC to perform the requirements of his or her past relevant work regardless of the claimant's age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(iv). Past relevant work is work that the claimant has done within the past 15 years, that was substantial gainful activity, and that lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.920(a)(4)(iv). The ALJ considers whether the claimant retains the capacity to perform the particular functional demands and job duties of the past relevant work, either as the claimant actually performed it or as ordinarily required by employers throughout the national economy. *Garibay v. Comm'r Of Soc. Sec.*, 336 F. App'x 152, 158 (3d Cir. 2009) (quoting SSR 82–6). "If the claimant can perform [her] past relevant work despite [her] limitations, [she] is not disabled." *Hess*, 931 F.3d at 202 (citing 20 C.F.R. § 404.1520(a)(4)(iv)); *see also* 20 C.F.R. § 416.920(a)(4)(iv). Here, the ALJ determined that Miller is unable to perform any past relevant work, including working as a retail cashier position, stock clerk, and warehouse

worker. (Doc. 13-2, at 26). Thus, the ALJ proceeded to step five of the sequential analysis. (Doc. 13-2, at 27).

    F.   STEP FIVE

At step five of the sequential analysis, the ALJ considers the claimant's age, education, and work experience to determine whether the claimant can make the adjustment to other work. 20 C.F.R. § 416.920(a)(4)(v). A claimant who can adjust to other work is not disabled. 20 C.F.R. § 416.920(a)(4)(v). Here, considering Miller's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Miller can perform. (Doc. 13-2, at 27). In making this determination, the ALJ relied on the vocational expert's testimony that Miller is able to perform the requirements of occupations such as a sorter, packer, and inspector all with positions ranging from 256,000 to 705,000 nationally. (Doc. 13-2, at 27-28). Accordingly, the ALJ determined that Miller is not disabled and denied her application for benefits. (Doc. 13-2, at 28).

**IV.**   **DISCUSSION**

Miller submits two grounds for reversal of the ALJ's decision. (Doc. 16, at 7-14). First, Miller states that the ALJ failed to discuss probative evidence supporting a finding that she meets the requirements of Listing 8.05. (Doc. 16, at 7-10). Second, Miller asserts that the ALJ improperly discounted the opinion of her treating physician Dr. Chandragiri, M.D. (Doc. 16, at 10-14). The Commissioner responds that the ALJ adequately addressed the applicability of listing 8.05 and substantial evidence supports the ALJ's conclusion on the matter. (Doc. 17, at 13-17). Additionally, the Commissioner asserts that the ALJ was justified in finding Dr. Chandragiri's opinion unpersuasive. (Doc. 19, at 21-27).

A. THE ALJ SUFFICIENTLY ANALYZED LISTING 8.05

According to Miller, the ALJ's decision that she did not meet the requirements of listing 8.05 is not supported by substantial evidence because "the ALJ failed to even discuss the probative evidence that [Miller] meets Listing 8.05." (Doc. 16, at 8). Specifically, Miller asserts that the ALJ did not consider her impairments from lichen plano-pilaris and acne keloidalis nuchae. (Doc. 16, at 9-10). The Commissioner submits that the ALJ properly explained why Miller did not meet listing 8.05. (Doc. 17, at 13-17).

The ALJ, in step three of the decision, must determine whether the claimant's severe impairment or combination of impairments meets or equals the medical equivalent of a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii), 416.925, 416.926. Any ALJ conclusion must be capable of judicial review. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000). For the conclusion to be capable of judicial review, the ALJ must set forth the reasons for the decision. *Burnett*, 220 F.3d at 119.

Listing 8.05 calls for a finding of disability for "[d]ermatitis (for example, psoriasis, dyshidrosis, atopic dermatitis, exfoliative dermatitis, allergic contact dermatitis), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.05. "Extensive skin lesions" must involve multiple body sites or critical body areas and result in a very serious limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00. Very serious limitations include, but are not limited to, interference with joint mobility which very seriously limits use of more than one extremity, very serious limitations on ability to do fine and gross motor movements, and very serious limitations on the ability to ambulate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00.

ALJ decisions must be "read as a whole" when assessing whether they are supported

by substantial evidence. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ is not required to use any "particular language ... or format"; rather, the only requirement is that "there is sufficient development of the record and explanation of findings to permit meaningful review." *Barnhart*, 364 F.3d at 505. "The ALJ's evaluation of the evidence must appear in the decision but need not appear specifically in the Listings discussion." *Faust v. Berryhill*, No. 3:17-CV-1236, 2019 WL 522692, at *4 (M.D. Pa. Feb. 11, 2019) (citing *Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007)).

> In considering listing 8.05, the ALJ writes that
>
> [Miller's] lichen plano-pilaris, and acne keloidalis nuchae do not meet or equal listing 8.05. The medical records do not reflect that claimant has extensive skin lesions (as defined in 8.00C(l)), that persist for at least 3 months despite continuing treatment as prescribed. Therefore, the claimant's lichen plano-pilaris, and acne keloidalis nuchae do not meet or equal listing 8.05.
>
> (Doc. 13-2, at 19).

The ALJ supports his opinion with evidence in his step three conclusion regarding listing 8.05 in his discussion of Miller's RFC. (Doc. 13-2, at 23-24). The ALJ discusses Miller's skin conditions in detail, noting that she was diagnosed with lichen plano pilaris and acne keloidalis nuchae in September 2017 and notes her treatment for these issues. (Doc. 13-2, at 23; Doc. 13-8, at 87). However, the ALJ also noted that there "are no visits focusing on treatment of [Miller's] skin condition for [the] rest of the relevant period at issue." (Doc. 13-2, at 23; Doc. 13-9, at 55, 60, 71). The ALJ also explains that there are references to Miller's skin condition in notes from January, October, and November of 2018, but they indicate improvement and "d[o] not have any assessment or plan relative to [Miller's] skin condition." (Doc. 13-2, at 23; Doc. 13-9, at 55, 60, 71). The ALJ describes that "there is sporadic treatment with findings inconsistent with claimant's allegations and testimony. Nowhere within the

records for the relevant period, do any of the doctors note open wounds, pus, or bleeding. Further, no restrictions or limitations have been assessed relating to claimant's skin condition." (Doc. 13-2, at 24). This constitutes analysis capable of judicial review, thus the ALJ met its obligation under *Burnett*. *See Burnett*, 220 F.3d at 119. Since evaluation of step three evidence "need not appear specifically in the Listings discussion," and the ALJ *did* evaluate step three evidence in the RFC discussion, this matter shall not be remanded on grounds that the ALJ's erred in his analysis of Listing 8.05. *See Faust*, 2019 WL 522692, at *4.

    B.    THE ALJ'S TREATMENT OF DR. CHANDRAGIRI'S OPINION WAS JUSTIFIED

Miller's second ground for remand is that the ALJ erred in finding the opinion of her treating physician Dr. Chandragiri not persuasive. (Doc. 16, at 10-14; Doc. 13-2, at 26). Miller argues that the ALJ relied on improper reasoning and ignored probative evidence when evaluating Dr. Chandragiri's opinion of Miller's mental functioning. (Doc. 16, at 13-14). The Commissioner asserts that the ALJ explained the supportability and consistency factors regarding Dr. Chandragiri's opinion, appropriately assessing the persuasiveness of Dr. Chandragiri's opinion.[3] (Doc. 17, 21-26).

Assessing a claimant's RFC falls within the purview of the ALJ. 20 C.F.R. § 416.946(c); SSR 96-8p, 1996 WL 374184 (S.S.A. July 2, 1996). "[RFC] is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s).'" *Burnett.,* 220 F.3d at 121 (quoting *Hartranft v. Apfel*, 181 F.3d 358, 359 (3d Cir. 1999)). Specifically, one's RFC reflects the *most* that an individual can still do, despite his

---

[3] Additionally, the Commissioner contends that the ALJ permissibly found the competing opinion of Dr. Cloutier more persuasive and explained the supportability and consistency factors regarding Dr. Cloutier's opinion. (Doc. 17, at 26-27).

or her limitations, and is used at steps four and five to evaluate the claimant's case. 20 C.F.R. §§ 416.920, 416.945; SSR 96-8P, 1996 WL 374184 at *2. In crafting the RFC, the ALJ must consider all the evidence of record, including medical signs and laboratory findings, daily activities, medical source statements, and a claimant's medical history. SSR 96-8p, 1996 WL 374184, at *5; *see also Mullin v. Apfel*, 79 F. Supp. 2d 544, 548 (E.D. Pa. 2000). An ALJ's RFC findings, however, must be supported by the medical evidence. *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986). "[O]nce the ALJ has made this [RFC] determination, [a court's] review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence." *Black v. Berryhill*, No. 16-1768, 2018 WL 4189661 at *3 (M.D. Pa. Apr. 13, 2018). Applying this standard to the present record, the Court finds substantial evidence supports the ALJ's RFC determination as it pertains to the opinion of Dr. Chandragiri.

In *Cotter*, the Circuit Court clarified that the ALJ must not only state the evidence considered which supports the result but also indicate what evidence was rejected: "Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 704, 706-707 (3d Cir. 1981). However, the ALJ need not undertake an exhaustive discussion of all the evidence. *See*, *e.g.*, *Knepp*, 204 F.3d at 83. "There is no requirement that the ALJ discuss in her opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

As this matter involves a claim filed after March 27, 2017, the new regulatory framework governing the evaluation of medical opinions applies to the ALJ's evaluation of

the medical opinions in the record. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132-01 (Mar. 27, 2017)); *see also* 82 Fed. Reg. 15263 (March 27, 2017); 82 Fed. Reg. 16869 (corrective notice) (explaining that SSR 96-2p and 96- 5p do not apply to newly filed or pending claims after March 27, 2017). The ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a). Under the new regulations, rather than assigning weight to medical opinions, the Commissioner will articulate "how persuasive" he or she finds the medical opinions. 20 C.F.R. § 416.920c(b). The Commissioner's consideration of medical opinions is guided by the following factors: supportability; consistency; relationship with the claimant (including the length of the treatment relationship, the frequency of examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and the examining relationship); specialization of the medical source; and any other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.920c(c). The most important of these factors is the "supportability" of the opinion and the "consistency" of the opinion, which are the same factors that formed the foundation of the rule which prioritized the opinion of a treating source. *Densberger v. Saul*, No. 1:20-CV-772, 2021 WL 1172982, at *8 (M.D. Pa. Mar. 29, 2021) (citing *Andrew G. v. Comm'r of Soc. Sec.,* No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.NY. Oct.1, 2020)); 20 C.F.R. § 416.920c(b)(2).

      The ALJ must explain how he or she considered the "supportability" and "consistency" of a medical source's opinion. 20 C.F.R. § 416.920c(b)(2). Generally, the ALJ may, but is not required to, explain his or her consideration of the other factors, but if there

are two equally persuasive medical opinions about the same issue that are not exactly the same, then the ALJ must explain how he or she considered the other factors. 20 C.F.R. § 416.920c(b)(3). "[W]hen the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered [the remaining] factors . . . ." *Densberger*, 2021 WL 1172982, at *8. To facilitate judicial review, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests" and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. *Cotter*, 642 F.2d 700, at 706-707.

The opinion of Dr. Chandragiri is an acceptable medical source as he is a licensed physician. 20 C.F.R. § 416.902(a)(1); (Doc. 13-9, at 4). Under the new regulations, Dr. Chandragiri "[is] not entitled to any deference given [his] status as [a] 'treating physician[n].'" See *Duhl v. Kijakazi,* No. 20-1123, 2021 WL 5909819, at *3 (W.D. Pa. Dec. 14, 2021); (Doc. 13-2, at 26). The ALJ is only required to consider the supportability and consistency of the opinion of Dr. Chandragiri, which he adequately explains in his opinion. (Doc. 13-2, at 26).

Here, the ALJ finds that the opinion of Dr. Chandragiri is not persuasive. (Doc. 13-2, at 26). The ALJ considered Dr. Chandragiri's opinion inconsistent and unsupported with his findings because his office records indicated that Miller has "consistently good hygiene and eye contract, no abnormal movements or behavior, cooperative behavior, normal speech, appropriate affect, coherent thought processes, no hallucinations, illusions, or delusions, no suicidal or homicidal ideations and fair insight and judgment [and that Miller's] depression is controlled[,] and her mood is stable." (Doc. 13-2, at 26; Doc. 13-9, at 2-3). This conclusion by the ALJ is supported by the record and substantial evidence. (Doc. 13-2, at 26; Doc. 13-9,

at 2-3).

Miller argues that the ALJ's note that Dr. Chandragiri's opinion is in check box form and "includes only conclusions regarding claimant's limitations, without any rationale or documentation supporting these conclusions" is inadequate to discount Dr. Chandragiri's opinion. (Doc. 13-2, at 26; Doc. 16, at 13). In determining an opinion's supportability, an ALJ considers the "relevant . . . objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)." 20 C.F.R. § 416.920c(c)(1). This Court has found that an ALJ's note that a medical opinion was in check-box form still meets the requirements for evaluating the persuasiveness of an opinion under the new regulations. *See Simpson v. Kijakazi*, No. 1:20-CV-00275, 2021 WL 3869942, at *8 (M.D. Pa. Aug. 27, 2021) (finding that an ALJ's note that a medical opinion "was rendered on a check-box form and that it gave no additional information for the basis of [the medical source's] conclusion" along with other evidence, met the standard under the new rules for addressing supportability and consistency); *see also Shaw v. Kijakazi*, No. 20-cv-02695-RAL, 2021 WL 3487320, at *5 n. 7 (E.D. Pa. Aug. 6, 2021) (finding that an ALJ's note that a medical opinion was in check box form, when paired with other evidence demonstrating that the ALJ did not rely on the form of the opinion in finding that the opinion was less persuasive, was based in substantial evidence). As noted *supra*, the ALJ has adequately explained his reasoning for finding Dr. Chandragiri's opinion less persuasive when he described the supportability and consistency of the opinion. (Doc. 13-2, at 26). Additionally, the ALJ relied on the check box form in crafting his opinion, demonstrating that the form of the opinion did not affect his decision. (Doc. 13-2, at 26; Doc. 13-9, at 2-3). Thus, his note that the opinion was in check box form does not deter the Court's finding that his persuasiveness

determination of Dr. Chandragiri's opinion is rooted in substantial evidence.

As such, this case shall not be remanded on the ground that the ALJ's consideration of Dr. Chandragiri's opinion was not supported by substantial evidence.

### V. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the Commissioner's decision to deny Miller's application for benefits be **AFFIRMED**, final judgment be issued in favor of the Commissioner, and the Clerk of Court close this case.

An appropriate Order follows.

Dated: January 18, 2022                                  *s/ Karoline Mehalchick*
                                                          **KAROLINE MEHALCHICK**
                                                          **Chief United States Magistrate Judge**